## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SAI,

    *Plaintiff*,

  v.              Civil Action No. 14-1876 (RDM)

DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

    *Defendants*.

## MEMORANDUM OPINION

   Plaintiff, who suffers from a neurological disorder that causes intermittent muteness and muscle spasms, alleges that he was harassed and mistreated on the basis of his disability during two incidents at airport security checkpoints in early 2013—one at Boston Logan International Airport ("BOS") and the other at San Francisco International Airport ("SFO"). He filed administrative complaints with the Department of Homeland Security ("DHS") under procedures promulgated pursuant to the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* When DHS failed to respond to his complaints, he brought this suit, alleging causes of action under the Rehabilitation Act and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* Notably, the present suit does not directly seek redress for Plaintiff's alleged mistreatment at the security checkpoints. Rather, Plaintiff alleges that DHS, the Transportation Security Administration ("TSA"), and the individuals who were responsible for processing his administrative complaints violated his rights by failing to respond to his those complaints within the time period prescribed by the governing regulation. To the extent the Rehabilitation Act provides a remedy relating to any discrimination

that Plaintiff may have suffered at the two checkpoints, he has elected to pursue those claims in other litigation. *See, e.g.*, *Sai v. TSA*, No. 15-cv-13308 (D. Mass. Sept. 4, 2015).

The case is before the Court on three dispositive motions: (1) a motion to dismiss filed by DHS, the TSA and several individual defendants sued in their official capacities, Dkt. 23; (2) a separate motion to dismiss filed by the individual defendants, who were also sued in their personal capacities, Dkt. 63; and (3) Plaintiff's motion for partial summary judgment, Dkt. 7. Plaintiff has also filed three non-dispositive motions: (4) a motion for leave to take discovery, Dkt. 72 at 38; (5) a motion for leave to amend his complaint, Dkt. 73; and (6) a renewed motion for leave to proceed *in forma pauperis*, Dkts. 65, 66. This Memorandum Opinion and the Order that accompanies it resolve these six motions before the Court.

With respect to Plaintiff's claims against DHS, the TSA, and the individual defendants sued in their official capacities ("Agency Defendants"), the Court will grant in part and deny in part the Agency Defendants' motion to dismiss, and will grant in part and deny in part Plaintiff's motion for partial summary judgment. First, to the extent Plaintiff seeks to compel the Agency Defendants to respond to his BOS complaint, his claim is moot, because DHS responded to the BOS complaint after he filed this action. Second, to the extent Plaintiff seeks damages as a result of the Agency Defendants' failure to process his complaints, neither the Rehabilitation Act nor the APA affords him such a remedy. Finally, to the extent that Plaintiff seeks to compel the Agency Defendants to respond to his SFO complaint on the theory that they have unlawfully delayed such a response, the Court agrees that such relief is available. Because the Court concludes that Plaintiff's underlying cause of action against these defendants arises under the APA, not the Rehabilitation Act, there is no evidence that Congress intended to preclude relief under Section 706(1) of the APA, which instructs courts to "compel agency action unlawfully

withheld or unreasonably delayed." 5 U.S.C. § 706(1).  Further, because it is uncontroverted that the Agency Defendants have failed to respond to Plaintiff's SFO complaint for almost three years, and because Defendants have failed to justify the delay, the Court agrees with Plaintiff that relief under Section 706(1) is not only available but appropriate.  Accordingly, the Agency Defendants' motion to dismiss is **GRANTED** with respect to Plaintiff's claims for monetary and nonmonetary relief arising out of the BOS complaint and for monetary relief arising out of the SFO complaint and **DENIED** with respect to Plaintiff's claim for nonmonetary relief arising out of his SFO complaint.  Correspondingly, Plaintiff's motion for partial summary judgment is **GRANTED** with respect to his claim for nonmonetary relief arising out of his SFO complaint and **DENIED** with respect to his BOS complaint.

With respect to Plaintiff's claims against the individual defendants sued in their personal capacities ("Individual Defendants"), the Court concludes that the Westfall Act, 28 U.S.C. § 2679, requires the substitution of the United States for Individual Defendants for every claim except the claim asserted under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and that, because Plaintiff concededly failed to exhaust his administrative remedies before filing suit, these claims must then be dismissed.  The Court also concludes that Plaintiff has failed to state a claim under *Bivens* or any similar cause of action against the individual-capacity defendants. Accordingly, Individual Defendants' motion to dismiss is **GRANTED**, and Plaintiff's claims against them are dismissed.

Finally, for the reasons stated below, the Court **DENIES** Plaintiff's motion for additional discovery (Dkt. 72 at 38), **DENIES** Plaintiff's motion for leave to amend his complaint (Dkt. 73), and **DENIES** Plaintiff's renewed motion for leave to proceed *in forma pauperis* or, in the alternative, to file an application *ex parte* and under seal (Dkt. 65).

# I.  BACKGROUND

## A.  Facts

Plaintiff, whose full legal name is Sai, has a "permanent, episodic motor disability" that can cause painful muscle spasms, speech impairment, and even paralysis. Dkt. 1 at 47. Episodes of high stress can trigger or exacerbate these symptoms. *Id.* As a result, Plaintiff has on multiple occasions experienced acute symptoms while going through airport security checkpoints. This action arises out of two such incidents: one at Boston Logan International Airport on January 21, 2013, and another at San Francisco International Airport on March 1, 2013. *Id.* at 37. During each incident, Plaintiff alleges that TSA agents failed to accommodate his disability by denying him access to medication and writing implements for use when he was unable to speak, among other things. *See id.*; *see also* Dkt. 31-1 at 1–3.

In response to these incidents, Plaintiff filed two administrative complaints with DHS— the first on January 26, 2013, and the second on March 15, 2013. Dkt. 1 at 30–31. In the complaints, he alleged that the agency had violated the Rehabilitation Act, 29 U.S.C. § 794, by discriminating against him on the basis of his disability. *Id.* DHS acknowledged that it had received Plaintiff's complaints, *id.*, but did not respond to the substance of the complaints within the 180-day period specified in the DHS regulations. Plaintiff made repeated efforts to obtain a response to his complaints, *see id.* at 33–43, but to no avail. As of November 5, 2014, when he filed this lawsuit, Plaintiff had received no substantive response from DHS to either complaint. *Id.* at 1, 43. Although Plaintiff eventually received a response to his BOS complaint (on March 4, 2015, over two years after it was filed), *see* Dkt. 31 at 1, he has received no response to his SFO complaint.

Attempting to remedy what he views as unlawful delay, Plaintiff filed this suit against a variety of defendants—including DHS, the TSA, and ten named individual defendants ranging from the Administrator of the TSA to the individual DHS officers who handled his complaints, in both their official and their personal capacities. Dkt. 1 at 5–6. Construing the *pro se* complaint liberally, as the Court is required to do, Plaintiff alleged causes of action under the Rehabilitation Act, 29 U.S.C. § 794; the APA, 5 U.S.C. § 706; *Bivens v. Six Unknown Named Agents*, 403 U.S. 388; the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346; and a number of common-law torts, including negligent infliction of emotional distress, intentional infliction of emotional distress, and conspiracy.[1] *Id.* at 9–14. Plaintiff seeks declaratory and injunctive relief, including an order compelling DHS to produce responses to his administrative complaints, and money damages, as well as costs. *Id.* at 14–15.

The present action does not seek relief for the allegedly discriminatory acts at the security checkpoints. Instead, Plaintiff maintains that "[t]his suit is brought strictly for matters relating to defendants' handling of [his] complaints." *Id.* at 5. Plaintiff has brought another suit, in the District of Massachusetts, to challenge the TSA's actions at the BOS checkpoint. *See Sai v. TSA*, No. 15-cv-13308 (D. Mass. Sept. 4, 2015).[2] The present action, in contrast, is premised on a

---

[1] Defendants dispute whether Plaintiff's complaint properly pleads a claim under the APA. *See* Dkt. 23 at 12–13; Dkt. 62 at 3–4. But Count 1 of Plaintiff's complaint explicitly states that "5 [U.S.C.] § 706(1) *requires* that defendants be compelled [to] issue the two responses unlawfully withheld and unreasonably delayed." Dkt. 1 at 10 (emphasis in original). Especially considered in light of Plaintiff's *pro se* status, the complaint's pleadings are sufficient to state an APA claim.

[2] The Massachusetts action also repeats many of the allegations raised here relating to the handling of Plaintiff's administrative complaints. *See* Complaint at 7, *Sai*, No. 15-cv-13308 (D. Mass. Sept. 4, 2015) (describing the TSA's "deliberate[] and unlawful[] refus[al] to respond to Sai's grievance"). In addition, Plaintiff has filed suit under the Freedom of Information Act and the Privacy Act in this district seeking the disclosure of material relating to the incidents and to the handling of the administrative complaints. *See Sai v. TSA*, No. 14-cv-703 (D.D.C. Mar. 13,

regulation that requires DHS to respond to an administrative complaint brought under the Rehabilitation Act within 180 days. *See* 6 C.F.R. § 15.70(g)(1). Defendants do not dispute that DHS failed to act on Plaintiff's complaints within the 180-day period. They dispute only the legal consequences of their inaction.

## B. Procedural History

The Court has previously outlined the extensive procedural history of this case and will only repeat the portions of that history relevant to the pending motions. *See Sai v. DHS*, 99 F. Supp. 3d 50 (D.D.C. 2015). In particular, Plaintiff moved for partial summary judgment almost immediately after filing the action. *See* Dkt. 7. Amid a flurry of more than a dozen procedural motions filed by Plaintiff, Defendants filed a motion to dismiss under Rule 12. *See* Dkt. 23. On April 16, 2015, the Court entered an order resolving the pending procedural motions, setting a schedule for the resolution of the dispositive cross-motions, and imposing rules governing subsequent motions practice. *Sai*, 99 F. Supp. 3d at 56–69. Both Plaintiff's motion for partial summary judgment and Defendants' motions to dismiss are now fully briefed.

In the meantime, on March 4, 2015, DHS responded to Plaintiff's first administrative complaint, which concerned his treatment at Boston Logan International Airport. *See* Dkt. 31. In its response, the TSA denied that any violation of the Rehabilitation Act had occurred. *See id.* at 8. In the TSA's view, the actions that TSA agents took at the airport were based not on Plaintiff's disability but on his "continued failure to cooperate with the screening process." *Id.* Further, the TSA reasoned, nothing the TSA agents did at the airport deprived Plaintiff of "full and complete access to TSA's security screening program." *Id.* at 9 (quoting *Ruskai v. Pistole*,

---

2014). The merits of that action are not before the Court in this Opinion or in the accompanying Order.

775 F.3d 61, 79 (1st Cir. 2014)).  Finally, the TSA explained, Plaintiff's failure fully to inform

TSA agents about his disability limited "the government's ability to offer a reasonable

accommodation."  *Id.* at 6.  Plaintiff appealed the TSA's decision within the agency, but his

appeal was denied on August 25, 2015.  *See* Dkt. 78-1 at 1.  He filed suit to challenge that

decision in the District of Massachusetts on September 4, 2015.  *See Sai v. TSA*, No. 15-cv-

13308 (D. Mass. Sept. 4, 2015).

## II.  DISCUSSION

### A.  Threshold Issues

1.  *Mootness*

As an initial matter, the Court must consider how DHS's denial of Plaintiff's complaint

arising out of the BOS incident affects the scope of the case and the Court's jurisdiction.  As the

Court of Appeals has observed, "subject matter jurisdiction 'is, of necessity, the first issue for an

Article III court,' for '[t]he federal courts are courts of limited jurisdiction, and they lack the

power to presume the existence of jurisdiction in order to dispose of any case on any other

grounds.'"  *Loughlin v. United States*, 393 F.3d 155, 170 (D.C. Cir. 2004) (quoting *Tuck v. Pan*

*Am. Health Org.*, 668 F.2d 547, 549 (D.C. Cir. 1981)).  This principle, moreover, extends to each

distinct claim asserted in a case—absent subject-matter jurisdiction, federal courts are without

power to consider or to adjudicate any claim, *see Loughlin*, 393 F.3d at 171—and the principle

cannot be lessened or avoided by combining multiple claims in a single count.

A federal court's duty to ensure that it is acting within the confines of its jurisdiction

continues throughout the course of the litigation.  The parties must maintain a live dispute, with

concrete consequences, "at all stages of review, not merely at the time the complaint is filed."

*Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974).  Thus, where "events have so transpired that

the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future," the relevant case or claim becomes moot, *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990), and, absent unusual circumstances, the Court is deprived of jurisdiction. *See also Loughlin*, 393 F.3d at 170 ("[M]ootness doctrine encompasses the circumstances that destroy the justiciability of a suit previously suitable for determination.'" (quoting 13A Charles A. Wright et al., *Federal Practice & Procedure* § 3533 (2d ed. 1984))).

Here, there is no dispute that the Court had Article III jurisdiction over Plaintiff's claims at the time he filed them. But it is equally clear that "events have transpired" that have limited the scope of the live controversy between the parties. As relevant here, Plaintiff filed the instant suit to compel DHS and other defendants to respond to the two administrative complaints that Plaintiff filed. Since then, DHS has rendered its final decision with respect to the BOS complaint. As a result, at least with respect to that aspect of the dispute, there is nothing left for the Court to do, and that portion of the case is therefore moot.

Despite having received a response to his BOS complaint, Plaintiff contends that the Court still has jurisdiction to consider the merits of his claim for injunctive and declaratory relief because the alleged misconduct is "capable of repetition, yet evading review." *See* Dkt. 80 at 7. Plaintiff is correct that the courts recognize an exception to the mootness doctrine for claims that "evad[e] review" because "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration," and that are "capable of repetition" because there is "a reasonable expectation that the same complaining party would be subject to the same action again." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam)); *see also United Bhd. of Carpenters & Joiners of Am., AFL-CIO v.*

*Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Canada, AFL-CIO*, 721 F.3d 678, 687–88 (D.C. Cir. 2013). Plaintiff is incorrect, however, that the exception applies here. Whether defendants acted unlawfully in failing timely to respond to Plaintiff's BOS complaint is not an issue that "evades review": indeed, Plaintiff has raised the same legal issue with respect to his SFO complaint, which the Court's Opinion resolves. And because DHS has yet to act on that administrative complaint, making it ripe for adjudication here, Plaintiff has no basis to invoke the capable-of-repetition-yet-evading-review exception to the mootness doctrine with respect to the BOS complaint.

Plaintiff also contends that he has not received the type of response to the BOS complaint to which he is entitled. Pointing to his motion to expedite, Plaintiff argues that what he has sought are responses to the administrative complaints "without litigation-induced omissions." Dkt. 70 at 21 (quoting Dkt. 7 at 3). That, however, is a different claim from the one asserted in the complaint, and at any rate it is facially untenable. It is one thing to seek to compel an agency to respond to an administrative complaint within a reasonable time. It is entirely another to seek to control what that response says. Under Section 706(1) of the APA, a court may at times compel an agency "to take a *discrete* agency action that is it is *required to take*," but may not direct "*how* it shall act." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphases in original). Because Plaintiff did not seek this relief in the complaint—and because any effort to amend the complaint to include such a claim would be futile—this argument cannot salvage Plaintiff's claim for injunctive and declaratory relief stemming from the BOS events.

Plaintiff's claims for injunctive and declaratory relief relating to the BOS complaint are, accordingly, **DISMISSED** as moot. To the extent Plaintiff seeks damages or other relief with respect to the handling of the BOS complaint, those issues are separately addressed below.

2. *Summary Judgment and Rule 56(d)*

Plaintiff argues, as a preliminary matter, that the defendants' motions to dismiss should be treated as motions for summary judgment and that the Court should then defer or deny the motions in order to permit Plaintiff an opportunity to obtain discovery pursuant to Federal Rule of Civil Procedure 56(d). Dkt. 72 at 7, 38; *see* Fed. R. Civ. P. 12(d), 56(d). The Court disagrees. Rule 12(d) requires a court to treat a Rule 12(b)(6) motion to dismiss as a motion for summary judgment if it relies on "matters outside the pleadings." Fed. R. Civ. P. 12(d). But Plaintiff points to only two documents that he believes satisfy this standard. He first notes that DHS relies on its response to his BOS administrative complaint to argue that the case is moot. But that document was the subject of Plaintiff's own motion to take judicial notice, *see* Dkt. 31, which the Court now **GRANTS**, and, in any event, neither the fact that DHS has now responded nor the substance of that response is in any way disputed. *Cf. Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (describing "documents incorporated into the complaint by reference" and "matters of which a court may take judicial notice" as "sources courts ordinarily examine when ruling on Rule 12(b)(6) motions"). The undisputed existence of a DHS response to the BOS complaint does not turn the mootness inquiry into one in which additional evidence is necessary, nor does Plaintiff identify any evidence he believes he might obtain in discovery that would be relevant to the inquiry.

The only other "factual" material Plaintiff identifies is Defendants' Westfall certification, *see* Dkt. 23-1, but the Westfall Act contemplates the introduction of such a certification at the motion-to-dismiss stage, *see* 28 U.S.C. § 2679(d), and the Court knows of no authority for the proposition that its introduction converts a motion to dismiss into a motion for summary judgment. Moreover, as discussed below, to the extent that Plaintiff challenges the government's

Westfall certification, Plaintiff has not identified any disputed question of fact with sufficient specificity to open the door even to "limited discovery" regarding the absolute immunity afforded government employees acting within the scope of their employment. *See Wuterich v. Murtha*, 562 F.3d 375, 386 (D.C. Cir. 2009). Plaintiff's conclusory assertion that he "cannot present facts essential to justify [his] opposition" because they are "unavailable" to him, Dkt. 72 at 38 (quoting Fed. R. Civ. P. 56(d)), does not satisfy this standard. As the Court of Appeals has cautioned, opening the door to discovery based on "intuition" or the hope of finding some basis to challenge a Westfall certification "simply has no place in a Westfall Act absolute immunity case." *Wuterich*, 562 F.3d at 386.

The Court, therefore, **DENIES** Plaintiff's request to convert Defendants' motions to dismiss into motions for summary judgment, Dkt. 72 at 7, and **DENIES** Plaintiff's motion for discovery under Rule 56(d), *id.* at 38–39.

## B. Count I

Count I of Plaintiff's complaint alleges that the Agency Defendants violated Section 504 of the Rehabilitation Act and the APA by failing to respond to Plaintiff's administrative complaints in a timely manner. As a preliminary matter, the Court observes that Plaintiff cannot plausibly claim relief under Count I other than nonmonetary relief relating to the Agency Defendants' delay in processing the SFO complaint. The Rehabilitation Act does not waive the sovereign immunity of the United States for monetary claims arising from alleged discrimination "under any program or activity conducted by any Executive agency," *see Lane v. Peña*, 518 U.S. 187, 191, 197 (1996), nor does the APA waive sovereign immunity for claims seeking monetary relief, *see* 5 U.S.C. § 702 (authorizing "[a]n action in a court of the United States seeking relief

other than money damages"). And, for the reasons explained above, Plaintiff's claims for declaratory and injunctive relief relating to his BOS administrative complaint are moot.

To the extent that Plaintiff seeks injunctive or declaratory relief requiring DHS to provide a response to his SFO complaint, however, he is on stronger ground. Plaintiff seeks summary judgment on Count I based on two straightforward propositions: (1) DHS's Rehabilitation Act regulations require the agency to respond to an administrative complaint within 180 days, 6 C.F.R. § 15.70(g)(1); and (2) almost three years have passed since Plaintiff filed the SFO complaint with DHS. Defendants do not dispute either premise, but they maintain that neither the Rehabilitation Act nor the APA provides an applicable cause of action. In their view, the Rehabilitation Act "implies a private right of action to sue for injunctive relief in federal court" for violations of the *substantive* rights protected by Section 504, but the Act does not create a private right of action for violations of the *administrative* rules at issue here. Dkt. 60 at 4–5. They further argue that the APA does not fill this gap, since catch-all review is available under the APA only "for final agency action [including a 'failure to act'] for which there is no other adequate remedy in a court." *See* 5 U.S.C. §§ 551(13), 704. According to Defendants, the availability of a cause of action under the Rehabilitation Act for violations of the *substantive* rights established by Section 504 constitutes an alternative "adequate remedy in a court" and thus precludes APA review of any shortcomings in the *administrative* process. Dkt. 23 at 10–12.

As explained below, the Court agrees that Plaintiff does not have a cause of action under the Rehabilitation Act for the agency's failure to respond to the SFO complaint in a timely manner. Defendants are also correct that, at times, the existence of an alternative remedy for a *substantive* right precludes APA review of an agency's asserted failure to resolve an *administrative* complaint in a timely fashion. Thus, for example, in *Council of and for the Blind*

*of Delaware County Valley v. Regan*, 709 F.2d 1521, 1531–32 (D.C. Cir. 1983) (en banc), the Court of Appeals held that the availability of an alternative substantive remedy set out in an independent statute precluded APA review of the agency's failure to meet a statutory deadline for administrative resolution of a discrimination claim. The Court disagrees, however, that this is such a case.

Defendants' preclusion argument turns on the premise that Plaintiff has a cause of action under the Rehabilitation Act, and that this cause of action is an adequate alternative remedy that precludes APA review. As explained below, however, that premise is incorrect. Any claim that Plaintiff may have to enforce Section 504 does not arise implicitly under the Rehabilitation Act; it arises under the APA itself. As a result, unlike in *Council of and for the Blind*, there is no basis to conclude that Congress has provided Plaintiff with an independent statutory remedy that would preclude APA review of Plaintiff's related administrative claim. Because DHS has manifestly failed to comply with its obligation to render a decision on the SFO complaint in a timely manner, and has offered no justification for its delay, the Court agrees that Plaintiff is entitled to relief for "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

1. *Source of Plaintiff's Cause of Action*

Because Defendants' arguments turn on the remedies afforded Plaintiff by the Rehabilitation Act and the APA, the Court begins by identifying the source of Plaintiff's cause of action to enforce the Rehabilitation Act. Congress enacted the Rehabilitation Act, the "first major federal statute designed to protect the rights of and provide assistance to the handicapped people of this country," *Smith v. Barton*, 914 F.2d 1330, 1338 (9th Cir. 1990), "to ensure that members of the disabled community could live independently and fully participate in society,"

*American Council of the Blind v. Paulson*, 525 F.3d 1256, 1259 (D.C. Cir. 2008).  Under Section 504 of the Act,

> [n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . .

29 U.S.C. § 794(a).  Section 504 further provides that "[t]he head of each [Executive] agency shall promulgate such regulations as may be necessary to carry out" the 1978 amendments to the Act, which extended its protections to "program[s] or activit[ies]" conducted by federal agencies. *Id.*

Section 504 unambiguously imposes a duty on federal agencies not to discriminate on the basis of disability in "any program or activity" they conduct.  It is this duty that Plaintiff initially sought to enforce—first by filing an administrative complaint with the agency, and then by filing suit in Massachusetts to challenge the agency's response to that complaint.  But Section 504 also requires federal agencies to adopt implementing regulations to "carry out" their obligations under the Act.  Count I of the complaint in this lawsuit implicates this duty; it asserts that the Agency Defendants have violated the Rehabilitation Act by failing to comply with the regulations they have promulgated to enforce it.  The Agency Defendants, as noted above, do not contest that they have failed to comply with the governing regulations.  They simply argue that Plaintiff lacks a cause of action to enforce those regulations, because (1) the Rehabilitation Act does not permit a suit to challenge an agency's delay in responding to an administrative complaint brought under procedures promulgated pursuant to the Act, and (2) Plaintiff cannot resort to Section 706(1) of the APA, because the existence of a substantive Rehabilitation Act cause of action precludes APA review, including review of an alleged administrative failing.

14

a.   Rehabilitation  Act

The Court agrees with Defendants that Plaintiff does not have a cause of action under the Rehabilitation  Act to remedy DHS's failure to respond to the SFO complaint  in a timely  manner. The Rehabilitation  Act says nothing about the processing or consideration of administrative complaints.   Rather, it merely requires that federal agencies "promulgate  such regulations as may be necessary to carry out" the 1978 amendments to the Act. 29 U.S.C. § 794(a).  There is no question that DHS has adopted those regulations,  *see* 6 C.F.R. § 15.70, and Plaintiff does not seek to compel the adoption  or modification  of the statutorily-required  regulation.   Likewise, the remedial provision  of the Rehabilitation  Act says nothing  about claims to enforce the Act's implementing  regulations.   As discussed in greater detail  below, in relevant respects, that section of the Act merely authorizes  claims relating to discrimination  by recipients or providers of federal assistance.  *See* 29 U.S.C. § 794a(a).

Nor is there any basis to imply  a cause of action under the Rehabilitation  Act for an agency's failure to comply  with its implementing  regulations.   As the Supreme Court has admonished,  "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  As a result, "[t]he judicial  task is to interpret the statute Congress has passed to determine  whether it displays  an intent to create not just a private right but also a private remedy."  *Id.*  Section 504 requires agencies to adopt procedures to implement  Congress's antidiscrimination  mandate, but it lacks the "'rights-creating' language" that the Supreme Court demanded in *Sandoval*.  *See id.* at 288; *see also Cannon v. Univ. of Chicago*, 441 U.S. 677, 690 n.13 (1979).  To the contrary, the part of Section 504 that requires agencies to adopt these regulations  operates much like the statutory text found insufficient  in *Sandoval*: its focus is not "on the individuals  protected" but on the federal

agencies that it instructs to implement the substantive provisions of the Act. *Sandoval*, 532 U.S. at 289. The fact that those implementing regulations require that DHS respond to complaints within 180 days, moreover, does not create a cause of action where Congress has failed to do so. As *Sandoval* also explains, "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Id.* at 291.

> b.   Administrative Procedure Act

As a result, the question comes down to whether the APA creates a cause of action for Defendants' alleged failure to respond to the SFO complaint in a timely manner. Defendants argue that the APA is unavailable to remedy any shortcomings in DHS's *administrative* process because the Rehabilitation Act provides an adequate alternative remedy in the form of an implied cause of action to vindicate *substantive* rights under Section 504. That contention, in turn, requires that the Court consider the statutory basis for whatever cause of action Plaintiff may have to assert those *substantive* rights.

Although the law is unsettled regarding the exact source of the cause of action, no court has questioned that claims for nonmonetary relief seeking to enforce Section 504's ban on discrimination in federal programs are actionable. In *Lane v. Peña*, the Supreme Court held that Congress, in amending the Rehabilitation Act to cover federal programs and activities, did not intend to waive the United States's sovereign immunity for suits for money damages. *See* 518 U.S. at 189, 200. The United States did not contest the availability of injunctive relief, however, *id.* at 196, and the Supreme Court was careful to limit its discussion and holding to "awards of monetary damages," *id.* at 189, 192–93, 196, 200. Subsequently, in *American Council of the Blind v. Paulson*, an advocacy group and several blind individuals sued the Department of

Transportation for failing to design and issue forms of paper currency that would be recognizable to the blind. *See Am. Council of the Blind v. Paulson*, 463 F. Supp. 2d 51, 52 (D.D.C. 2006), *aff'd*, 525 F.3d 1256. Before the district court, the United States argued that *Lane* foreclosed the availability of nonmonetary relief against federal agencies that had violated Section 504. *See* 463 F. Supp. 2d at 57–58. The district court rejected that argument, concluding that *Lane* had done no more than foreclose a suit for damages against a federal agency, *id.* at 58, and the government abandoned the argument on appeal, *see* 525 F.3d at 1266. Although the Court of Appeals did not discuss the source of the relevant cause of action, it affirmed the district court's interlocutory decision granting a declaratory judgment against the Treasury Department for failing "to design and issue paper currency that is readily distinguishable to the visually impaired," *id.* at 1259, and remanded the case to the district court "to address the Council's request for injunctive relief," *id.* at 1274.

This, however, leaves the question whether the cause of action for a substantive claim of disability discrimination in a federal program or activity arises under the Rehabilitation Act itself or under the APA. This question was not addressed in *Lane*, because, as the Solicitor General noted in his brief, "resolution of the source of the cause of action, be it under Section 504(a) directly or the APA, would . . . not alter the outcome of this case" as long as Section 504(a) was not read to waive sovereign immunity for monetary damages. *See* Brief for the Respondents, *Lane*, 518 U.S. 187 (No. 95-365), 1996 WL 115795, at *27 n.17. For the following reasons, the Court concludes that the cause of action arises under the APA. First, the Supreme Court has repeatedly cautioned courts not to imply causes of action in the absence of evidence that Congress intended "to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 286. Here, Congress unambiguously intended to create a right to be free from disability

discrimination in federal programs and activities. *See* 29 U.S.C. § 794(a). But there is relatively little evidence that Congress intended to create a private cause of action under the Rehabilitation Act to enforce that right. As the Supreme Court observed in *Lane*, the Act expressly specifies the remedies available to "any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance," *id.* § 794a(a)(2), but it says nothing about the remedies available to a person aggrieved by discrimination in a "program or activity conducted by an[] Executive agency," *id.* § 794(a); *see Lane*, 518 U.S. at 192.

Second, it is easy to imagine why Congress would not have created a private cause of action to enforce Section 504 against federal agencies: it knew that review would be available under the APA. The APA "embodies the basic presumption of judicial review to one 'suffering legal wrong because of agency action.'" *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967) (quoting 5 U.S.C. § 702). As then-Judge Breyer wrote almost three decades ago, "federal action is nearly always reviewable for conformity with statutory obligations without any such 'private right of action.'" *NAACP v. Sec'y of Hous. & Urban Dev.*, 817 F.2d 149, 152 (1st Cir. 1987). Although Congress might provide for a cause of action against an agency (as well as a waiver of sovereign immunity) when it intends to permit an aggrieved person to recover *damages* from the United States, when it intends to permit only declaratory and injunctive relief, there will often be no need to provide for a cause of action that is independent of the APA. *Cf. J.L. v. Soc. Sec. Admin.*, 971 F.2d 260, 268 (9th Cir. 1992) ("Whether this suit is characterized as review of agency action under the APA or a private suit directly under the Rehabilitation Act should not make a significant difference to [plaintiffs'] chances for success on the merits." (internal quotation marks omitted))), *overruled on other grounds by Lane*, 518 U.S. 187.

Finally, although the caselaw on this question from other circuits is sparse, it supports the conclusion that Plaintiff's cause of action arises under the APA. The most thorough treatment of the issue can be found in the First Circuit's decision in *Cousins v. Secretary of the Department of Transportation*, 880 F.2d 603 (1st Cir. 1989) (en banc). In that case, the plaintiff, a hearing-impaired truck driver, claimed that a Department of Transportation regulation prevented him from working in violation of his rights under the Rehabilitation Act. Although a panel of the court initially held that the plaintiff properly brought his action as an implied claim under the Rehabilitation Act, the *en banc* court disagreed and held that the claim should have been brought under the APA. *Id.* at 605–08. The First Circuit explained that, although the Rehabilitation Act expressly provides a cause of action against the government in its role as provider of federal funds, "the Act is silent about whether and how a person injured by the government *as regulator* is to enforce the Act against the government." *Id.* at 605 (emphasis in original). In that court's view, this "omission simply reflects the fact that such a person already has a right to judicial review, as set forth in the APA." *Id.* This conclusion, the court explained, furthers the purposes of the APA to provide a "single uniform method for review of agency action," *id.*, and it avoids the oddity of implying a cause of action where another statute already provides a means for the plaintiff "to challenge [the] agency action," *id.* at 606.

The Fourth Circuit reached a similar conclusion, relying largely on *Cousins*, in *Clark v. Skinner*, where a truck driver whose left arm was amputated above the elbow challenged a different Department of Transportation regulation, which required commercial drivers to demonstrate proficiency with the use of both upper limbs. 937 F.2d 123, 125–26 (4th Cir. 1991). Like the First Circuit, the Fourth Circuit held that such an action may be maintained, if at all, under the APA, and that "the Rehabilitation Act does not afford [plaintiff] a private cause of

action against the Secretary of Transportation." *Id.* at 126. As the Fourth Circuit explained, the "proper avenue of appeal" for such an aggrieved party "is from a final administrative decision" pursuant to the APA.[3] *Id.*

One might argue that the First and Fourth Circuits' decisions are distinguishable on the ground that they concerned actions undertaken by "the government *as regulator*," *Cousins*, 880 F.2d at 605, as opposed to alleged discriminatory misconduct by government employees. *Cf. Doe v. Att'y Gen. of the United States*, 941 F.2d 780, 793 (9th Cir. 1991) ("The APA's purpose is to provide an administrative forum for those challenging administrative and regulatory agency action, not to provide a forum for adjudicating government tort liability."), *overruled on other grounds by Lane*, 518 U.S. 187. The Court is not persuaded, however, that this distinction holds. Whether a suit to enforce Section 504 is treated as arising under the Rehabilitation Act or the APA, *Lane* makes clear that the remedies available are the same: the plaintiff may only obtain declaratory or injunctive relief, not money damages. *See Lane*, 518 U.S. at 197; 5 U.S.C. § 702. Any person whose discrimination claim can be alleviated by forward-looking relief of that nature, moreover, may well have the kind of claim that is suited to APA review. At least as a general matter, those acts of discrimination that can be remedied by forward-looking relief (for instance, by a change in the agency's policies or practices) are likely to involve either demands for relief that have been formally rejected or established rules or procedures that fail to comply

---

[3] District courts in other circuits have reached conflicting results. *Compare, e.g.*, *Wilson v. Seattle Hous. Auth.*, No. 09-226, 2010 WL 1633323, at *5–6 (W.D. Wash. Apr. 22, 2010) (agreeing with the First and Fourth Circuits that plaintiffs must proceed under the APA), *with Am. Council of the Blind v. Astrue*, No. 05-4696, 2008 WL 1858928, at *7 (N.D. Cal. Apr. 23, 2008) (finding "jurisdiction under the Rehabilitation Act"), *with Cooke v. Bureau of Prisons*, 926 F. Supp. 2d 720, 731–32 (E.D.N.C. 2013) (declining to reach the issue).

with the Act. *See* 5 U.S.C. § 551(4)–(11), (13). There is nothing discordant about applying the APA to claims of that type.

The question whether any particular alleged violation of Section 504—including the violation alleged in Plaintiff's SFO complaint—will be subject to review under the APA is not one the Court needs to address today. It is sufficient for present purposes to conclude that the Rehabilitation Act does not provide an implied cause of action for discrimination in federal programs and activities (or for failure to comply with administrative procedures), but that the APA provides a cause of action to challenge final agency action that is not in accordance with the Rehabilitation Act. In this action, Plaintiff merely challenges the failure of Defendants to respond to his administrative complaint in a timely manner. If Plaintiff subsequently brings an action under the APA relating to allegedly discriminatory conduct during the SFO incident and/or the substance of the agency's response, a court can at that time determine whether he has identified a final agency action subject to review under the APA, whether the alleged final agency action is contrary to the Rehabilitation Act, and whether any other defense is available.

## 2. *The Agency Defendants' Preclusion Defense*

Having concluded that any cause of action that Plaintiff may have for an alleged violation of Section 504's prohibition against discrimination in federal programs or activities arises under the APA, the Court must next consider the Agency Defendants' contention that Section 704 of the APA, which precludes review of any agency action for which there is another "adequate remedy in a court," 5 U.S.C. § 704, bars review of Defendants' delay in responding to Plaintiff's SFO complaint. In support of this argument, Defendants rely on a line of decisions holding that statutes similar to the Rehabilitation Act preclude APA review. *See* Dkt. 72 at 22–23. Those decisions, however, are inapposite. In each case, the Court of Appeals held that an independent

statutory scheme with a unique remedial structure precluded separate resort to the APA. Here, because Plaintiff's cause of action arises under the APA itself, there is no independent statutory scheme that implicitly or expressly precludes APA review.

In the first of these cases, *Council of and for the Blind of Delaware County Valley, Inc. v. Regan*, 709 F.2d 1521, the Court of Appeals considered whether plaintiffs could sue the Treasury Department's Office of Revenue Sharing ("ORS") for failing to comply with a statutory timetable for resolving claims of discrimination by recipients of federal funding and for failing to enforce the relevant restrictions on discrimination by those recipients. Congress had provided a private right of action that permitted private citizens to file an administrative complaint with the ORS and then to sue *the grant recipient* if the ORS either (a) failed to issue a determination within 90 days or (b) determined that the grant recipient had complied with the antidiscrimination provision. *See id.* at 1527. Against that backdrop, the Court of Appeals declined to imply a cause of action *against the ORS* under the relevant statute, and instead held that Congress intended to permit private enforcement only by way of actions against those recipients allegedly engaged in discriminatory conduct. *Id.* at 1531. Of more relevance here, the Court then held that the statute also precluded relief under Section 704 of the APA, because the private remedy in the statute—that is, the provision permitting plaintiffs to sue the recipients of federal funds—was sufficient to remedy the recipients' discriminatory conduct. *Id.* at 1531–32. In so holding, the Court expressly rejected the plaintiffs' contention that the private right of action was inadequate because it did not provide a means of redressing the ORS's own failure to enforce "the statute's nondiscrimination command." *Id.* at 1532. As the Court explained, "even if . . . a nationwide suit would be more *effective* than several [suits against funding recipients],

we hold that the remedy provided by Congress is *adequate* to redress the discrimination allegedly encountered by appellants." *Id* at 1533 (emphases in original).

The second case followed a similar path. There, a group of civil-rights organizations filed suit to challenge what they saw as the federal government's failure to enforce a number of civil-rights statutes, including Title VI and the Rehabilitation Act. *See Women's Equity Action League v. Cavazos* ("*WEAL*"), 906 F.2d 742, 750 (D.C. Cir. 1990) (R.B. Ginsburg, J.).[4] They, too, alleged that the recipients of federal funds had acted in a discriminatory manner and that the agencies had failed to respond to administrative complaints about the underlying discrimination. The Court held, relying on *Council of and for the Blind*, that neither Title VI nor the other statutes afforded the plaintiffs a right of action against the government in its role as a monitor of the recipients' compliance. *Id.* at 749–50. The Court also addressed, and rejected, the plaintiffs' alternative argument that the APA permitted them to sue the government even if Title VI (and the other statutes) did not. *Id.* at 750–51. It held—again following *Council of and for the Blind*—that Title VI and the Rehabilitation Act precluded reliance on the APA, even though the statute did not provide a mechanism by which the plaintiffs could obtain review of the government's failure to respond to their complaints and commence investigations in a timely manner. *See id.* As the Court of Appeals explained,

> Suits directly against the discriminating entities may be more arduous, and less effective in providing systemic relief, than continuing judicial oversight of federal government enforcement. But under our precedent, situation-specific litigation affords an adequate, even if imperfect, remedy. So far as we can tell, the suit

---

[4] The plaintiffs in *WEAL* sued school districts across the country as "recipient[s] of Federal assistance," and the Department of Health, Education and Welfare in its role as the "Federal provider of such assistance." 29 U.S.C. § 794a(a)(2). Accordingly, although *WEAL*'s holding applies to the Rehabilitation Act, it applies only to the remedial scheme governing violations of the Act by the recipients of federal funding and by agencies in their roles as the providers of such funding. *See Lane*, 518 U.S. at 192–93 (making this distinction).

targeting specific discriminatory acts of fund recipients is the only court remedy Congress has authorized for private parties, situated as plaintiffs currently are.

*Id.* at 751.

Neither *Council of and for the Blind* nor *WEAL* considered whether the availability of a suit for declaratory and injunctive relief *against a federal agency* precludes reliance on the APA to challenge *that agency's* failure to respond to an administrative complaint. *Cf. El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. HHS*, 396 F.3d 1265, 1270–71 (D.C. Cir. 2005) (describing these cases as holding that "APA review is unavailable where there is a private cause of action against a third party otherwise subject to agency regulation"). That unresolved issue, however, was addressed and resolved in *Garcia v. Vilsack*, 563 F.3d 519 (D.C. Cir. 2009). There, in response to allegations that the Department of Agriculture had for years ignored complaints regarding its own discriminatory conduct, Congress passed a statute permitting eligible complainants *either* to file suit in federal court *or* to renew their administrative complaints. *See* 563 F.3d at 521–22. Those who chose to renew their administrative complaints "could seek *de novo* review in federal court" after the agency had adjudicated those complaints. *Id.* at 522. The plaintiffs in *Garcia* "chose the first option," but also brought APA claims against the agency arising out of its failure to investigate their prior complaints. *Id.*

The Court of Appeals held, following *WEAL*, that the federal statute precluded review of the agency's failure to investigate under the APA by affording the plaintiffs a cause of action to challenge the discrimination itself. *Id.* at 523. The fact that the plaintiffs "fault [the agency's] regulation of itself and not its regulation of a third party," the Court of Appeals explained, did not render *WEAL* inapplicable to the remedial scheme. *Id.* at 525. "If anything," it explained, "a[] . . . discrimination claim filed directly against the [agency] affords a better remedy than those available" against the third parties in prior suits. *Id.* "If successful, a plaintiff can obtain

24

declaratory and injunctive relief against the agency itself," which "would presumably deter the agency to the same extent as a successful APA claim." *Id.* The Court of Appeals also rejected the plaintiffs' efforts to identify an independent purpose for their APA suit, explaining that "[t]he suggestion that [substantive] relief would not vindicate appellants' interest insuring that the [agency] adheres to its duty-to-investigate regulations"—that is, the plaintiffs' *administrative* aim—"was rejected in *Council* [*of and for the Blind*]. . . and *WEAL*." *Id.*

The government argues that *Garcia*, *Council of and for the Blind*, and *WEAL* control this case. It contends that the availability of nonmonetary relief under the Rehabilitation Act to remedy a substantive violation of Section 504 precludes the use of the APA to remedy an administrative violation. But, as the Court has explained, the government's argument proceeds from a mistaken premise: that Plaintiff's cause of action arises under the Rehabilitation Act, not the APA itself. The distinction is critical. The government cites no authority for the proposition that the APA can preclude itself—that is, that the availability of a *substantive* remedy under the APA may in some circumstances preclude an *administrative* remedy under the APA. Such an argument is at odds with a commonsense reading of the preclusion provision, which asks whether there is some "other" alternative remedy available in court. *See* 5 U.S.C. § 704. It also runs counter to the Supreme Court's decision in *Bowen v. Massachusetts*, 487 U.S. 879 (1988).

In *Bowen*, the Supreme Court traced the history of the preclusion rule found in Section 704 of the APA. *See* 5 U.S.C. § 704. The Court explained that the primary purpose of this statutory provision was to make clear "that Congress did not intend the general grant of review in the APA to duplicate *existing* procedures for review of agency action," such as those that permitted review of Federal Trade Commission and National Labor Relations Board orders in the courts of appeals. *Bowen*, 487 U.S. at 903 (emphasis added). That same statutory purpose is

identified in the authoritative *Attorney General's Manual on the Administrative Procedure Act*
95 (1947), which explained: "The net effect, clearly intended by the Congress, is to provide for a
dovetailing of the general provisions of the Administrative Procedure Act with the particular
statutory provisions which the Congress has moulded for special situations." The preclusion
provision, moreover, should "not be construed to defeat the central purpose of providing a broad
spectrum of judicial review of agency action," at least not in a case in which Congress has not
established "special statutory procedures" to channel review of an agency's decisionmaking.
*Bowen*, 487 U.S. at 903. That is what has happened here: while Congress has specified exactly
what remedies a plaintiff has to vindicate his or her rights under the Rehabilitation Act against a
recipient of federal funding, or even an agency providing such funding, it has said nothing about
what remedies a plaintiff has against an agency that discriminates on the basis of disability in a
federal program or activity. *See Lane*, 518 U.S. at 192–93. In such a circumstance, *Bowen*
directs that Section 704's preclusion provision is inapplicable.

Moreover, to the extent that *Garcia*, *Council of and for the Blind*, and *WEAL* turned on
the fact that the statutory schemes considered in those cases did not require plaintiffs to exhaust
their administrative remedies—and therefore the plaintiffs did not require an agency decision
before proceeding to court—there is at least a question whether such a rationale would extend
here. Although there is no exhaustion requirement in the APA, *see Darby v. Cisneros*, 590 U.S.
137, 146–47 (1993), a plaintiff is entitled to review only of "final agency action." 5 U.S.C. §
704; *see Bennett v. Spear*, 520 U.S. 154 (1997). The Court need not, and does not, decide what
would constitute "final agency action" in the context of an alleged violation of Section 504 or,
indeed, precisely what agency "rule, order, license, sanction, relief or the equivalent thereof, or
failure to act," *see* 5 U.S.C. § 551(13), Plaintiff might seek to challenge under the APA. *Cf. J.L.*,

971 F.2d at 265 ("If a court's intervention is required in the form of an APA suit, a Rehabilitation Act suit or both, its decision should be informed by a considerable body of information about the administration of the SSI program and SSA's internal organization and operations."). For present purposes, the Court merely concludes that the final agency action requirement under the APA implicates many of the same purposes as an exhaustion requirement and, as a result, Defendants' delay in responding to Plaintiff's complaint could well pose a barrier to any substantive claim that Plaintiff might ultimately seek to pursue—particularly to the extent that any such claim might rely on an asserted failure of DHS to redress a grievance expressed in that complaint.

The Court therefore concludes that the Agency Defendants' preclusion defense fails, and **DENIES** their motion to dismiss to the extent that Plaintiff seeks declaratory and injunctive relief arising out of their failure to timely process his SFO administrative complaint.

3. *180-Day Requirement*

With respect to Count I of the complaint, the only remaining question is whether the Court should "compel agency action unlawfully withheld or unreasonably delayed" under Section 706 of the APA. *See* 5 U.S.C. § 706(1). "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton*, 542 U.S. at 64 (emphasis in original). Here, Plaintiff alleges that Defendants have failed to respond to his SFO complaint in the 180-day timeframe set out in the governing regulations. *See* 6 C.F.R. § 15.70(g)(1). The Agency Defendants do not deny that they have failed to respond to the complaint. Nor do they dispute that the response Plaintiff seeks is a "discrete agency action" that they are "required to take." Indeed, the Agency Defendants mount no defense of their failure to respond to Plaintiff's SFO complaint whatsoever, except to assert

that Plaintiff has no cause of action by which to hold them accountable. Because the Court

disagrees with that premise, it will proceed to the merits of Plaintiff's motion for partial

summary judgment.

First, the Agency Defendants' failure to act is the kind of discrete and mandatory action

that the Supreme Court described in *Norton*. *See* 542 U.S. at 64. There, the Supreme Court

illustrated the governing law with an example analogous to the present case, explaining that a

statutory provision that required an agency "'to establish regulations to implement'

interconnection requirements '[w]ithin 6 months' of the date of the enactment of the [statute]

would . . . support[] a judicial decree under the APA requiring the prompt issuance of

regulations." *Id*. at 64–65 (quoting 47 U.S.C. § 251(d)(1)). The fact that the deadline Plaintiff

seeks to enforce in this case is set out in a regulation, not a statute, is immaterial; the *Norton*

Court explained that an agency could be compelled to follow "agency regulations that have the

force of law." *Id*. at 65. Defendants' failure to respond to Plaintiff's complaint is, therefore, the

appropriate subject of a suit under Section 706(1).

The question, then, is whether the Agency Defendants' delay is "unreasonable" under the

APA. Although "[t]here is no per se rule as to how long is too long to wait for agency action,"

*In re American Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (internal

quotation marks omitted), the Court of Appeals has, in a series of cases beginning with

*Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir.

1984), outlined six factors to guide courts in determining whether relief under Section 706(1) is

warranted. "The first and most important factor is that 'the time agencies take to make decisions

must be governed by a rule of reason.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C.

Cir. 2008) (quoting *TRAC*, 740 F.2d at 80). The remaining five factors are:

> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*Id.* (quoting *In re United Mine Works of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999)).

Plaintiff argues that Defendants' delay (now verging on three years) is "*prima facie* unreasonable" in light of the 180-day deadline. Dkt. 7 at 1. But the question is not that simple. As one commentator has observed, the cases that address agencies' failure to comply with statutory deadlines "fall along the spectrum of judicial responses," with some requiring strict compliance and others permitting dramatic deviation. 2 Richard J. Pierce, *Administrative Law Treatise* § 12.3 (5th ed. 2010). The Court of Appeals has both denied claims of undue delay under Section 706(1) when agencies have missed the mark by much more time than Defendants have here, *see Grand Canyon Air Tour Coal. v. FAA*, 154 F.3d 455, 476 (D.C. Cir. 1998) (no remedy under Section 706(1) where Congress required agency to promulgate regulations within 120 days and regulations were not issued for ten years), and granted relief under Section 706(1) in cases of delay roughly analogous to the case before the Court, *see MCI Telecomm. Corp. v. FCC*, 627 F.2d 322, 340 (D.C. Cir. 1980) (explaining that the Telecommunications Act "assumes that rates will be finally decided within a reasonable time encompassing months, occasionally a year or two, but not several years or a decade"). The key question, under the APA and *TRAC*, is whether the delay is "reasonable" in light of the evidence in the record.

The problem before the Court is that there is no evidence in the record regarding the reasons behind the Agency Defendants' failure to respond to Plaintiff's SFO complaint. In both

their initial opposition to Plaintiff's motion for partial summary judgment, Dkt. 24, and in a supplemental opposition that the Court permitted them to file, Dkt. 60, the Agency Defendants do no more than reiterate their arguments as to why Plaintiff lacks a cause of action to compel them to respond to his complaint. As a result, the record is devoid of evidence or arguments that would justify Defendants' failure to respond to Plaintiff's complaint.

Although the question is not as simple as Plaintiff represents, the Court ultimately agrees that Defendants' 2.75-year delay in responding to his SFO complaint is "unreasonable" under *TRAC*. As a basic matter, and as the Agency Defendants concede, they have failed for almost three years to process an administrative complaint that, by regulation, they were required to have processed in 180 days. *See* 6 C.F.R. § 15.70(g)(1). It is difficult to envision the "rule of reason" that would permit an agency routinely to delay the processing of administrative complaints by a factor of five times the timetable set out in the agency's governing regulations—and Defendants have offered no justification or explanation here. Moreover, Plaintiff's interest in the timely processing of the complaint is not insubstantial. *See TRAC*, 750 F.2d at 80. He alleges in his complaint that he has suffered mistreatment "at multiple airports over multiple years, including in the nearly *two years* since the SFO incident happened." Dkt. 1 at 48 n.2 (emphasis in original). To the extent that Plaintiff has a right to be free of discrimination in the airport and has asked the agency to remedy such discrimination, the agency's delay in responding to his complaint has the effect of perpetuating the alleged wrong.

Moreover, it is plain even from the record before the Court that many of the factors that ordinarily militate against Section 706(1) relief are not present here. First, the relief Plaintiff seeks does not—as many cases do—seem to present the kind of "complex scientific, technological, and policy questions" that may arise when the relief sought is the promulgation of

a regulation or a policy. *See Action on Smoking & Health v. Dep't of Labor*, 100 F.3d 991, 993 (D.C. Cir. 1996); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003) (observing that the Section 706(1) determination "will depend in large part . . . upon the complexity of the task at hand"); *In re United Mine Workers*, 190 F.3d at 555 ("It is difficult for us to second-guess this projection in light of the host of complex scientific and technical issues involved . . . ." (internal quotation marks omitted)). All Plaintiff seeks is a response to a complaint—a response that might be eight pages (the length of DHS's response to his BOS complaint) or less. Second, while *TRAC* instructs reviewing courts to "consider the effect of expediting delayed action on agency activities of a higher or competing priority," 750 F.2d at 80, there is no basis to conclude that DHS's delay in responding to Plaintiff's administrative complaint is the product of "higher or competing priorit[ies]." After all, DHS responded to Plaintiff's BOS complaint in March 2015—over nine months ago—but has still not responded to Plaintiff's SFO complaint, which was filed only two months later. This is thus not a case in which a plaintiff is seeking to upend a "first-in, first-out" procedure by attempting to "automatically go to the head of the line at the agency." *See Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 614–15 (D.C. Cir. 1976). Thus, on the current record, "the agency [has] not show[n] due diligence in processing plaintiff's individual request." *Id.* at 615.

The Court is sympathetic to the difficulties that agencies encounter when they are tasked with meeting the kinds of timetables that the regulation on which Plaintiff relies impose. And it has no desire to micromanage DHS's efforts to process administrative complaints, here or in the future. But this is an unusual case: Plaintiff has demonstrated that the agency has exceeded the deadline it has set for itself five times over, and the agency has provided no reason why it should be excused from complying with the deadline. Therefore, the Court **GRANTS** Plaintiff's motion

for partial summary judgment in part (with respect to the SFO complaint) and **DENIES** it in part (with respect to the BOS complaint).   In an accompanying Order, the Court will direct the Agency Defendants to produce a response to the SFO complaint within a reasonable time, and no later than January 22, 2016.

## B.  The Remaining Counts

The Court next considers the motions to dismiss filed by both the Agency Defendants (Dkt. 23) and the individual defendants in their personal capacities (collectively, the "Individual Defendants") (Dkt. 63).  In these motions, Defendants assert a number of defenses to the array of tort claims that Plaintiff has pled arising out of their failure to timely process his administrative complaint.  In particular, Defendants argue that (1) the Westfall Act requires that the United States be substituted for the Individual Defendants as to the majority of Plaintiff's claims; (2) the FTCA requires the dismissal of all of the tort claims against the United States, as Plaintiff has failed to exhaust them; and (3) the remaining claims against Individual Defendants sound neither in *Bivens* nor in any other cause of action.  The Court agrees.

As a threshold matter, Count IV of Plaintiff's Complaint alleges that defense counsel has "multipl[ied] proceedings unreasonably and vexatiously" in this case and requests sanctions under 28 U.S.C. § 1927.  Dkt. 1 at 12.  But Plaintiff provides no relevant support for his claim of unreasonable conduct "in any case" brought "in any court of the United States," *see* 28 U.S.C. § 1927, and the Court sees no basis whatsoever for the imposition of sanctions.  *See Patton Boggs, LLP v. Chevron Corp.*, 825 F. Supp. 2d 35, 42 (D.D.C. 2011) ("[T]he bar for the imposition of fees and costs under § 1927 is extremely high.").  The Court therefore construes Count IV as a motion for sanctions and **DENIES** it.

The remaining counts in Plaintiff's complaint allege an array of tort claims against ten named and additional unnamed defendants, ranging from John Pistole, the former administrator of the TSA, to the DHS officials who handled his administrative complaints. *See* Dkt. 1 at 5–6. Count II alleges that all of the Individual Defendants are liable under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, for violating Plaintiff's "civil rights"—seemingly his rights under the Rehabilitation Act and DHS regulations. Count III appears to allege claims for intentional and negligent infliction of emotional distress against all of the Individual Defendants. Count V alleges that several Individual Defendants—Zachary Bromer, Jeremy Buzzell, Erika Lucas, and several unnamed defendants—"obstructed the investigation of [Plaintiff's] Rehabilitation Act complaints." Dkt. 1 at 13. Count VI alleges standalone claims of civil conspiracy against all of the Individual Defendants who were involved in handling Plaintiff's administrative complaints.

Plaintiff thus brings two kinds of claims against the Individual Defendants: tort claims premised upon violations of state law (Counts III, V, and VI), and tort claims premised on violations of statutory or constitutional law (Count II). The problem for Plaintiff, as Defendants observe, is that the FTCA provides the exclusive remedy for the first set of claims, and Plaintiff has no remedy for the second. Accordingly, the Court will also grant Defendants' motions to dismiss Counts II, III, V, and VI.

1. *Westfall Act Substitution*

Defendants first move to substitute the United States for the Individual Defendants under the Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act. *See* Dkt. 78 at 9. The Westfall Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their

official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007); *see Wuterich*, 562 F.3d at 380.  In

pertinent part, the Act provides:

> Upon certification by the Attorney General that the defendant employee was
> acting within the scope of his office or employment at the time of the incident out
> of which the claim arose, any civil action or proceeding commenced upon such
> claim in a United States district court shall be deemed an action against the United
> States under the provisions of this title and all references thereto, and the United
> States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).  The effect of a certification under the Act, in short, is to "convert[] [a]

tort suit into a[n] FTCA action," subject to all of the exceptions and procedural requirements that

accompany that statute. *Wuterich*, 562 F.3d at 380.

Here, the Attorney General's delegate has attested that the Individual Defendants "were

acting in their scope of their employment at the time of the allegations stated in the Complaint."

Dkt. 23-1.  Although a plaintiff may contest a scope-of-employment certification, *see Gutierrez*

*de Martinez v. Lamagno*, 515 U.S. 417, 420 (1995), Plaintiff has not done so.  Instead, he argues

only that the Westfall Act permits substitution only to the extent the Individual Defendants were

sued in their official (rather than their personal) capacities.  Dkt. 74 at 36.  But, as the Court has

previously noted, "an official-capacity suit is, in all respects other than name, to be treated as a

suit against the [agency]" rather than the named defendant. *See Kentucky v. Graham*, 473 U.S.

159, 166 (1985).  Plaintiff's claims against the Individual Defendants in their personal capacities,

by contrast, are labeled as such because they would (if successful) impose personal liability on

them.  The substitution mechanism in the Westfall Act seeks to shield government employees

from such a prospect, at least when they act within the scope of their employment. *See Osborn*,

549 U.S. at 229.  Here, Plaintiff has provided no evidence that the Individual Defendants were

not acting within the scope of their employment at the time they processed his complaints, and

he cannot evade the Westfall Act in any other way.

Plaintiff also appears to argue, Dkt. 74 at 36–37, that Count II of his Complaint, which purports to bring a *Bivens* claim, falls within the Westfall Act's exceptions for claims "brought for a violation of the Constitution of the United States" or "a statute of the United States under which such action against an individual is otherwise authorized." 28 U.S.C. § 2679(b)(2); *see also Osborn*, 549 U.S. at 159. The Court agrees. Congress intended to preserve *Bivens* suits as a procedural mechanism for plaintiffs alleging constitutional torts by federal officers, and did not intend to replace all preexisting statutory remedies with the FTCA. *See United States v. Smith*, 499 U.S. 160, 166–67 (1991) ("[T]he FTCA is *not* the exclusive remedy for torts committed by Government employees in the scope of their employment when an injured plaintiff brings . . . a *Bivens* action . . . or . . . an action under a federal statute that authorizes recovery against a Government employee."); *Simpkins v. District of Columbia*, 108 F.3d 366, 371–72 (D.C. Cir. 1997). Defendants argue that Plaintiff does not fall within this exception because he cannot maintain a damages action for their failure to process his administrative complaint, Dkt. 78 at 10–11, but this argument goes to the merits of Plaintiff's claims, not the propriety of Westfall Act substitution.

Accordingly, the Court **GRANTS** Defendants' motion to substitute the United States for the Individual Defendants with respect to Counts III, V, and VI, and **DENIES** it with respect to Count II. The Court will discuss these counts further below.

2. *FTCA Claims (Counts III, V, and VI)*

Defendants argue that the Court, having substituted the United States for the Individual Defendants and "convert[ed] [Plaintiff's] tort suit into a[n] FTCA action," *Wuterich*, 562 F.3d at 380, must now dismiss Plaintiff's tort claims against the United States. They argue that all three tort counts should be dismissed without prejudice on the basis of Plaintiff's failure to exhaust his

administrative remedies. Dkt. 62 at 10. They also suggest that, for various reasons, the Court could dismiss each count *with* prejudice. *See* Dkt. 62 at 10 n.6 (arguing that, to the extent that Count III sounds in "abuse of process," the FTCA explicitly does not waive the United States's sovereign immunity against such a claim); Dkt. 63 at 16–18 (arguing that Counts V and VI do not make out plausible claims). The Court agrees with Defendants that Plaintiff's claims should be dismissed on the basis of his failure to exhaust his administrative remedies, and therefore declines to reach Defendants' additional arguments.

The FTCA precludes a claim for damages arising out of "the negligent or wrongful act or omission of any employee of the Government . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). Plaintiff did not file an FTCA claim with DHS before filing suit. *See* Dkt. 26. At an earlier stage in the proceedings, Plaintiff moved the Court to stay proceedings on his FTCA claims while he exhausted his remedies. *Id.* As the Court explained in its earlier opinion, there is considerable authority for the proposition that "[t]he plain language of the FTCA . . . unambiguously 'bars a plaintiff from *filing suit* before he or she has exhausted . . . administrative remedies,'" a failure that "cannot be remedied by . . . attempting to exhaust while the suit is pending." *Sai*, 99 F. Supp. 3d at 62–63 (quoting *Edwards v. District of Columbia*, 616 F. Supp. 2d 112, 116 (D.D.C. 2009)). The Court has no need to resolve the question, however, as Plaintiff now concedes that his FTCA claims should be dismissed. *See* Dkt. 72 at 35. The Court of Appeals has made clear that, under such a circumstance, a dismissal should be without prejudice, so that an FTCA plaintiff can exhaust his administrative remedies and then proceed. *See Simpkins*, 108 F.3d at 371 ("[F]orcing these cases through the administrative process helps

sort out not only worthless claims, but also worthy ones, which may be settled at that stage."). The Court will, accordingly, dismiss Counts III, V, and VI without prejudice.

   3. *Statutory / Bivens Claims (Count II)*

Defendants finally argue that Count II of Plaintiff's complaint, which purports to bring a claim under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, against the Individual Defendants, should be dismissed with prejudice because there is no *Bivens* remedy available to Plaintiff. The Court notes, as a threshold matter, that Count II is styled as a claim against Defendants arising out of their violation of Plaintiff's *statutory* rights—that is, his rights under "the Rehabilitation Act, and DHS' implementing regulations." Dkt. 1 at 11. But no matter how Count II is styled, the Court agrees with Defendants that it must be dismissed for failure to allege a cause of action.

The Supreme Court's decision in *Bivens* "recognized an implied private cause of action for damages against federal officials who violate the Fourth Amendment." *Klay v. Panetta*, 758 F.3d 369, 372 (D.C. Cir. 2014).[5] But in the decades since *Bivens*, both the Supreme Court and the lower courts have "proceeded cautiously in implying additional federal causes of action for money damages." *Meshal v. Higgenbotham*, 804 F.3d 417, 421 (D.C. Cir. 2015). The Individual Defendants argue vigorously that the Court should decline to infer a *Bivens* remedy arising out of agency delay, *see* Dkt. 63 at 18–19, 21–25, and the Court agrees that there is no basis for a *Bivens* claim here. It is established that a *Bivens* remedy exists, if at all, to "remedy . . . *constitutional* violations." *Wilson v. Libby*, 535 F.3d 697, 704 (D.C. Cir. 2008) (emphasis added). But the Court of Appeals has made clear that there is no violation of the Due Process

---

[5] A private party cannot bring a *Bivens* action against a federal agency. *FDIC v. Meyer*, 510 U.S. 471, 486 (1994). Thus to the extent Count II could be construed to plead a *Bivens* claim against the Agency Defendants, it is dismissed with prejudice on that ground.

Clause arising out of an agency's failure to process discrimination complaints in a timely manner. *See Council of and for the Blind*, 709 F.2d at 1533. Because Plaintiff can point to no constitutional violation that allegedly occurred during DHS's processing of his administrative complaints, he cannot invoke *Bivens* against any of the officers who processed them.

Nor, to the extent Plaintiff's complaint can be construed as stating claims against any of the Individual Defendants arising under a statute, could such a claim be viable. *Bivens* does not extend to statutory violations. *See Wilson*, 535 F.3d at 704. And to the extent that Plaintiff seeks money damages from the federal officers who processed his complaint, he is without a remedy, as neither the APA nor the Rehabilitation Act establishes a damages remedy against federal officers. As Plaintiff concedes, moreover, to the extent that his complaint can be read as stating claims arising under 42 U.S.C. § 1983 for statutory violations, such claims also would not be viable, as § 1983 only extends to state and local officers. *See District of Columbia v. Carter*, 409 U.S. 418, 424 (1973); *see also* Dkt. 72 at 36. In sum, Plaintiff has stated no viable statutory claim for damages against the Individual Defendants.

Having concluded that (1) Plaintiff's tort claims against the Individual Defendants must proceed, if at all, against the United States under the FTCA and after Plaintiff exhausts his administrative remedies, and (2) Plaintiff cannot pursue *Bivens* claims against the Individual Defendants arising out of the agency's delay in processing his administrative complaints, the Court **GRANTS** Individual Defendants' motion to dismiss.

## C. Plaintiff's Motions

The Court now turns to the two remaining motions filed by Plaintiff: his motion for leave to file an amended complaint, Dkt. 73, and his renewed motion to proceed *in forma pauperis*, Dkt. 66. (The Court has previously discussed, and denied, Plaintiff's pending motion for partial

summary judgment, Dkt. 7, and his pending motion for discovery under Rule 56(d), Dkt. 72 at 38.) For the following reasons, the Court will deny Plaintiff's motions.

    1. *Plaintiff's Motion for Leave to File an Amended Complaint*

    Plaintiff has moved for leave to file an amended complaint.  *See* Dkt. 73.  To the extent Plaintiff seeks to add claims relating to events that occurred after the filing of his original complaint—such as DHS's failure to respond to Plaintiff's appeal of the denial of his administrative complaint—the Court notes that his motion is better construed as a motion to file a supplemental pleading under Federal Rule of Civil Procedure 15(d).  *See* Fed. R. Civ. P. 15(d). But "the distinction is in most instances of little moment," *United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002), and has no bearing on this case, because both motions for leave to amend and motions to supplement should be denied where amendment (or supplementation) would be futile.  *Wildearth Guardians v. Kempthorne*, 592 F. Supp. 2d 18, 23 (D.D.C. 2008).  Plaintiff's proposed amended complaint purports to "drop[] [his] FTCA claims" (although it retains all tort claims against Individual Defendants); to "add[] a claim" under the Rehabilitation Act and the APA for Defendants' alleged failure to timely respond to Plaintiff's *appeal* of DHS's denial of his administrative complaints; and to "clarif[y] [his] APA claims" by making clear that Count I is pled under the APA as well as the Rehabilitation Act (and under § 706(2) as well as § 706(1)). *See* Dkt. 73 at 1; Dkt. 73-1 at 8–13.  Defendants oppose Plaintiff's motion on various grounds. They argue that it is unnecessary for Plaintiff to amend his complaint to drop his FTCA claims, because he has already consented to their dismissal, and that it would be futile to add any claim arising out of DHS's processing of Plaintiff's appeal of his administrative complaint, whether under the APA or the Rehabilitation Act, because neither statute permits Plaintiff to challenge agency delay.  *See* Dkt. 78 at 17–20.

The Court agrees that it would be unnecessary or futile to permit Plaintiff to amend or supplement his complaint. Although "the court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), it is well established that leave to amend should be denied when amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996). Plaintiff's principal reason for seeking leave to amend his complaint is to add a claim arising out of DHS's alleged failure to timely process his appeal of the denial of his BOS complaint. But DHS has now processed his appeal, *see* Dkt. 78-1, and so the claim Plaintiff seeks to add is moot for the same reasons that his original claims relating to his BOS complaint are moot. Nor is there any need for Plaintiff to amend his complaint to "drop" his FTCA claims or to "clarify" his APA claims, given the Court's conclusions that his FTCA claims must be dismissed and that his APA claims were pled with sufficient clarity in the original complaint.

The Court therefore **DENIES** Plaintiff's motion for leave to amend his complaint on the ground that the proposed amendments would be futile or unnecessary.

3. *Plaintiff's Renewed Motion to Proceed* In Forma Pauperis

At the commencement of the litigation, Plaintiff sought *in forma pauperis* ("IFP") status. Dkt. 3. At that time, he swore "under penalty of perjury" that he could not afford a lawyer and that he was a "beneficiary of a state-based system for low income persons," but he refused, "as a matter of principle and to preserve [his] standing in a forthcoming Supreme Court *certiorari* petition," to submit an affidavit containing "any details of [his] personal finances, state benefits, or similarly private matters on the public record merely because [he was seeking] IFP status." *Id.* at 1. Finally, Plaintiff stated that he was willing to file the required affidavit under seal and *ex parte*. *Id.* Recognizing, however, that the Court of Appeals had recently rejected a similar

application by Plaintiff in a different case, *Sai v. U.S. Postal Service*, No. 14-1005 (D.C. Cir. filed Jan. 7, 2014), and that, as a result, any appeal would be unlikely to prevail, Plaintiff also submitted a check for the required filing fee "in case this Court" were to deny Plaintiff's application for lack of sufficient support. *Id.* at 2. The Court denied Plaintiff's IFP motion "without prejudice for failure to meet the statutory requirements of 28 U.S.C. § 1915." Jan. 30, 2015 Minute Order.

Following this Court's denial of Plaintiff's motion, the Supreme Court denied Plaintiff's petition for a writ of *certiorari*, which sought review of the Court of Appeals's decision to deny his IFP application under similar, although not identical, circumstances. *Sai v. U.S. Postal Service*, 135 S. Ct. 1915 (2015). At that point, Plaintiff once again filed a motion with this Court, renewing his prior IFP application or, in the alternative, seeking reconsideration of the Court's prior ruling. Dkt. 65. At the same time, Plaintiff requested that the Court certify the issue for interlocutory appeal. *Id.* Defendants oppose Plaintiff's motion on the grounds that Plaintiff's application fails to comply with 28 U.S.C. § 1915, which requires that a person seeking IFP status submit an affidavit setting forth the person's assets and demonstrating an inability to pay the filing fee; Plaintiff previously litigated and lost this issue in the Court of Appeals; Plaintiff has failed to specify any specific reasons justifying his request to file under seal and *ex parte*; and, in any event, the interest in public access outweighs any interest in nondisclosure. Dkt. 67. Defendants also oppose interlocutory review. *Id.*

Plaintiff's brief is over ten pages long, and it touches on issues including whether IFP affidavits are "ministerial" or "judicial" documents, whether the First Amendment right of access applies, and whether Defendants have standing to oppose the motion. But neither Plaintiff's brief nor the accompanying affidavit provides any explanation of why or how disclosure of the

required information would cause Plaintiff any unique or identifiable harm.  Rather, Plaintiff's position is apparently premised on a matter of principle—he simply he asserts that his right to access to the courts "will be chilled" if he is required to disclose the required information and that he "*absolutely refuse*[*s*] to waive [his] privacy rights or [to] subject [himself] to the risks from public disclosure of [his] affidavit."  Dkt. 65 at 17 (emphasis in original).  He further states that he also "absolutely refuse[s] to provide such information to the defendants in this case," unless subject "to a subpoena with opportunity for a motion to quash."  Dkt. 65-1 ¶ 12.

Against this backdrop, the Court need not decide whether an IFP affidavit is a "judicial record" or how the rights of public access derived from the First Amendment and the common law would apply to it.  *See, e.g.*, *In re Boston Herald, Inc.*, 321 F.3d 174 (1st Cir. 2003); *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997).  Section 1915 requires the submission of a detailed affidavit, and, under the Court's practice these submissions, like other filings, are a matter of public record.  It is incumbent upon Plaintiff to demonstrate why this usual rule should not apply in his case, and the unsupported assertion of an unqualified interest in privacy is not sufficient.  *Cf. Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991) ("The decision as to access to judicial records is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." (quoting *United States v. Hubbard*, 650 F.2d 293, 316–17 (D.C. Cir. 1980)).  As Plaintiff points out, the issue he raises "affects tens of thousands of similarly situated litigants."  Dkt. 65 at 17.  If every one of those litigants was entitled to file an IFP application under seal and *ex parte*, with no showing of particularized need, the public would be denied important transparency in the working of the judiciary, opposing parties would be deprived of the opportunity to raise objections, and the courts would lose a corresponding check on potential

misstatements or omissions in IFP affidavits. Plaintiff's insistence that he is "absolutely" unwilling to share the required information with opposing counsel, moreover, is particularly difficult to justify. Parties often exchange extraordinarily sensitive information in litigation subject to protective orders. Yet, here, Plaintiff refuses to disclose his finances to Defendants without any explanation of how he might be harmed or reason to believe that Defendants' counsel would not maintain the confidentiality of that information.

Although Plaintiff fails to identify any basis for distinguishing his case from the many thousands of other cases in which a party seeks IFP status, he alludes to a number of generally applicable risks. He notes, for example, that disclosure of financial affidavits might pose a risk of identity theft. That, of course, does not explain why Plaintiff insists on *ex parte* treatment. But, even more fundamentally, it does not explain the basis for Plaintiff's concern. Plaintiff is not required to provide account numbers, his Social Security number, or any similar information. It seems implausible, moreover, that identity thieves are likely to peruse IFP applications in search of their victims. Nor does Plaintiff's general assertion that the affidavits might "disclose embarrassing and potentially harmful information, such as an affiant's family situation, disabilities, [or] dependents," *id.* at 17, further his argument. If Plaintiff has particular reasons why particular information should not be disclosed on the public docket, he is free to raise that issue with the Court. What he cannot do, however, is seek the benefit of IFP status while refusing to comply with the relevant rules and procedures and declining to offer any individualized rationale short of his personal conviction that the information at issue should not be disclosed.

Accordingly, the Court **DENIES** Plaintiff's motion to proceed *in forma pauperis*, or, in the alternative, for leave to file an affidavit in support of his application *ex parte*. Because this

Opinion and the accompanying Order disposes of all claims in this case, Plaintiff has no need for an order certifying the question under 28 U.S.C. § 1292(b).  The Court therefore **DENIES** his request for certification as moot.

### III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss in part and **DENIES** them in part, and **GRANTS** Plaintiff's motion for partial summary judgment in part and **DENIES** it in part.  The Court **DENIES** Plaintiff's remaining motions.  A separate Order will accompany this Memorandum Opinion.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  December 15, 2015